NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed / Docketed
September 12, 2007

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SANDOVAL, JORGE H, aka | ) | Case No. 06-11316-R |
| SANDIVAL, JORGE HOMERO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| AFFORDABLE BAIL BONDS, INC. | ) | |
| and ROBERTA A. DAMPF- | ) | |
| AGUILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-1264-R |
| | ) | |
| JORGE H. SANDOVAL aka | ) | |
| JORGE HOMERO SANDIVAL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR DEFAULT JUDGMENT**

Before the Court is the Motion for Default Judgment and Supporting Brief (Adv. Doc. 14) (the "Motion") filed by Plaintiffs Affordable Bail Bonds, Inc. and Roberta A. Dampf-Aguilar (collectively, the "Bondsman") on April 19, 2007. The Defendant, Jorge H. Sandoval aka Jorge Homero Sandival ("Sandoval"), has not responded to the Motion.

**I.     Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(I); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.   Procedural history

On December 5, 2006, the Bondsman filed a Complaint to Determine Dischargeability of Debt (Adv. Doc. 1) (the "Complaint").  On December 20, 2006, the Bondsman filed a return of service indicating that Sandoval was personally served on December 10, 2006. Adv. Doc. 6.  Although the time to respond to the Complaint has expired, Sandoval has not entered an appearance or filed a responsive pleading.

On April 19, 2007, the Bondsman filed the Motion, requesting that the Court enter a default judgment declaring that Sandoval's debt to the Bondsman is excepted from the discharge entered in Sandoval's bankruptcy case.[1]  "The general effect of an entry of default is to deem the allegations contained in a complaint as admitted."  Riehm v. Park (In re Park), 272 B.R. 323, 328-29 (Bankr. D.N.J. 2001).  For the purpose of the Motion, the Court deems the allegations contained in the Complaint to be admitted by Sandoval.

The Bondsman is not entitled to a judgment by default if the Complaint has not stated a cognizable claim.  See, e.g., Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200,

---

[1] Pursuant to Rule 55 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7055, a party seeking a default judgment must first obtain an "entry of default" from the clerk of the court by establishing by affidavit that the defendant is not a minor, incompetent, or serving in the military, and that the defendant was properly served and is in default.  Fed. R. Civ. P. 55(b) and 50 U.S.C.A. App. § 521 (the Servicemembers Civil Relief Act).  An entry of default is a prerequisite to the filing of a motion for default judgment.  See, e.g., Riehm v. Park (In re Park), 272 B.R. 323, 328 (Bankr. D.N.J. 2001)("Obtaining a default judgment involves a two step process. First, default must actually be entered against the non-appearing party.  Second, after the entry of default, the movant must request the entry of a default judgment.").
  Although the Bondsman did not obtain an entry of default prior to filing the Motion, the procedural defect is moot because the Court concludes that the Bondsman would not be entitled to a default judgment even if an entry of default had been obtained.  For the purposes of this order, the Court assumes that an entry of default would have been entered.

1205 (5th Cir. 1975). Accordingly, the Court will apply the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 12, to determine whether the well-pleaded allegations contained in the Complaint, taken in the light most favorable to the Bondsman, states a claim for excepting Sandoval's debt to the Bondsman from discharge.[2]

The Court notes that in support of its request for default judgment, the Bondsman attached to the Motion documents labeled Exhibits 1 through 9, which were not attached to or incorporated into the Complaint. Because Sandoval has not "defaulted" on the allegations implicitly contained in Exhibits 1 through 9, the authenticity of these documents is not deemed admitted by Sandoval and cannot be considered for the purpose of entering a default judgment against Sandoval. However, by attaching these exhibits to the Motion, the Bondsman clearly does not contest their authenticity, and the Court has considered such documents in the light most favorable to the Bondsman for the purpose of determining whether the Bondsman has stated or could state a claim against Sandoval.

The allegations of the Complaint, as supported by Exhibits 1 through 9, present the following set of facts:

---

[2] "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1969, 1974 . . . (2007). The Court explained that a plaintiff must 'nudge [ ][his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. Id. at 1974." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174 (10th Cir. 2007).

The Bondsman is a professional bail bondsman who posted two bonds with the District Court of Tulsa County, State of Oklahoma ("Bonds"), as surety for the promise of a criminal defendant, Bonito Yanez ("Yanez"), to appear in court as ordered or forfeit the Bonds. Complaint, ¶¶ 2, 3, 8. The Bonds, whose face value totaled $16,000.00, were executed by Yanez, as principal, and by the Bondsman, through its attorney in fact, as surety. Exhibit 1 (Bonds dated December 19, 2002). Sandoval was not the criminal defendant, and he did not execute the Bonds or act as surety to the State of Oklahoma on behalf of Yanez or the Bondsman.[3]

On January 13, 2003, Yanez failed to appear at a scheduled court hearing. Consequently, the Bonds were forfeited and Yanez and the Bondsman became responsible for payment of the Bonds to the State of Oklahoma. Complaint, ¶¶ 9, 10; Exhibit 2 (Docket Sheet for Yanez's Tulsa County criminal case). On January 15, 2003, the Tulsa County District Court entered an Order and Judgment of Forfeiture, which declared that Yanez's Bonds were forfeited to the State of Oklahoma and ordered that the Bondsman deposit with the clerk of the court an amount equal to the face amount of the Bonds within ninety-one days. Exhibit 3 (Forfeiture Judgment). On April 15, 2003, the Bondsman paid $16,000.00 to the State of Oklahoma on behalf of Yanez, as required by the Forfeiture Judgment. Exhibit 4 (Affidavit of Roberta Dampf-Aguilar); Exhibit 5 (Receipt for Payment).

In order to induce the Bondsman to obtain Yanez's release on bail by posting the

---

[3]Although in the Complaint, the Bondsman alleges that Sandoval obligated himself as a "surety and indemnitor for the full amount of a bail bond," the exhibits clarify that Sandoval contractually guaranteed payment of the amount of forfeited bonds *to the Bondsman*, not to the State of Oklahoma. See Exhibits 6-8.

4

Bonds on December 2002, Sandoval executed agreements with the Bondsman as an "indemnitor." Complaint, ¶ 7; Exhibit 6 (Plain Talk Agreement); Exhibit 7 (Bail Agreement); Exhibit 8 (Indemnitor/Guarantor Checklist). In the Bail Agreement, Sandoval agreed to "pay [the Bondsman] upon declaration of forfeiture of said Bail Bond the penal amount thereof." Bail Agreement, ¶ SIXTH. The Indemnitor/Guarantor Checklist also provided that "if the bond is ordered forfeited and it is not ordered reinstated or exonerated . . . [Sandoval] must pay the full amount of the bail forfeited to the bail agency." Indemnitor/Guarantor Checklist, ¶ 6 (emphasis added).

Upon forfeiture of the Bonds, Sandoval became contractually obligated to the Bondsman in the "penal amount" of the Bonds, *i.e.*, $16,000.00. Complaint, ¶ 12. Pursuant to the Bail Agreement, Sandoval also owed $4,150.00 for expenses incurred by the Bondsman related to securing the return of Yanez into the custody of the State of Oklahoma. Id. On February 10, 2003, the Bondsman filed a breach of contract action against Sandoval seeking damages of $20,150.00, and on May 6, 2004, the Bondsman obtained a judgment by default against Sandoval in the amount of $20,150.00. Complaint, ¶¶ 13, 14.

The Bondsman alleges that these facts state a claim under Section 523(a)(7), which excepts from discharge a "debt [that] is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ." and contends that the judgment against Sandoval in favor of the Bondsman is non-dischargeable. Complaint, ¶¶ 15, 16.

5

### III.    Conclusions of law

A defendant's failure to respond to a complaint does not automatically entitle a plaintiff to a default judgment in its favor.  The consequence of failing to respond to a complaint is the admission of all "well-pleaded" facts.  The defaulting defendant does not admit any conclusions of law, however.  See Riehm v. Park (In re Park), 272 B.R. 323, 329 (Bankr. D.N.J. 2001).  Thus, if the well-pleaded facts fail to state a cognizable claim, the plaintiff will not be entitled to judgment, even though the defendant failed to appear and defend.  See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("a default judgment cannot stand on a complaint that fails to state a claim"); Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1205 (5th Cir. 1975); Capitol Records v. Carmichael, No. 06-0251-WS-C, 2007 WL 1838258, at *2 (S.D. Ala. June 25, 2007); Park, 272 B.R. at 328-29; Ripple v. Boston Whaler Fin. Serv., Inc. (In re Ripple), 242 B.R. 60, 63 (Bankr. M.D. Fla. 1999).

Section 523(a)(7) excepts from a debtor's discharge a "debt [that] is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ."  11 U.S.C. § 523(a)(7).  The Court concludes that the facts alleged in the Complaint, as supported by the exhibits, fail to state a claim under Section 523(a)(7).

The material facts relevant to this adversary proceeding are identical to the operative facts in another adversary proceeding before this Court in which the Bondsman is plaintiff: Affordable Bail Bonds, Inc. and Roberta A. Dampf-Aguilar v. Michael Rex Thompson and

6

<u>Sandra Ray Thompson</u>, Adv. No. 07-1016-R (Bankr. N.D. Okla.) (the "Thompson Case").[4] In the Thompson Case, the Bondsman sought to except from discharge, pursuant to Section 523(a)(7), the obligation of the Thompsons to indemnify the Bondsman for forfeited bonds, and the parties filed cross-motions for summary judgment. Rejecting the same arguments the Bondsman has made herein in the Motion, the Court granted judgment to the Thompsons, concluding that the debt owed by the Thompsons to the Bondsman was dischargeable because –

> (1) the debt is not for a forfeiture of the Thompsons' bond to the State (*i.e.*, the Thompsons were not parties to any of the appearance bonds that were forfeited), nor is it a fine or penalty imposed by the State; instead, the debt represents a breach of the Thompsons' contract to indemnify the Bondsman; (2) the Thompsons' debt is not payable to the State nor is it for the benefit of the State, but rather, according to the Bail Bond Agreement, Contract and Checklist, the debt is payable to the Bondsman (*i.e.*, an individual and/or a private corporation); and (3) the debt results from the breach of the Thompsons' promise to indemnify the Bondsman for the monetary losses it incurred upon [the criminal defendant's] violation of the terms of the bonds, and therefore would function as "compensation for pecuniary loss." Accordingly, the Bondsman has not established any of the three elements of Section 523(a)(7).

Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Cross Motion for Summary Judgment (Adv. Doc. 20 in the Thompson Case) (the "Summary Judgment Order"), at 8. In addition, the Court concluded that the Bondsman's subrogation argument, *i.e.*, that it was entitled to "step into the shoes" of the State, was futile because the

---

[4]In the Thompson Case, the bonds that were executed by the criminal defendant as principal and the Bondsman as surety, and the Bail Agreement, Plain Talk Contract and Indemnitor/Guarantor Checklist that were executed by the Thompsons, as indemnitors, are substantially identical to the bonds and contracts at issue in this case.

7

Thompsons were never indebted to the State, and thus the Bondsman did not inherit any rights against the Thompsons from the State. Id. at 21, n.18.

The Court adopts the analysis, reasoning and authorities set forth in the Summary Judgment Order entered in the Thompson Case in concluding that the Bondsman cannot prevail on a Section 523(a)(7) claim under the facts alleged in the Complaint in this case. Specifically, the Court concludes that the Complaint and supporting documents indisputably establish that (1) Sandoval was not a party to the Bonds that were forfeited, and therefore his debt is not for a forfeiture of a bond, nor is his debt for a fine or penalty imposed upon him by the State; (2) Sandoval's debt is not payable to the State nor is it for the benefit of the State, but rather, the debt is payable to the Bondsman; and (3) the debt results from the breach of Sandoval's promise to indemnify the Bondsman for the monetary losses incurred when the Bondsman paid Yanez's debt to the state, and therefore would function as "compensation for pecuniary loss." The Complaint fails to allege facts to establish any of the three elements of Section 523(a)(7), and therefore the Bondsman is not entitled to a judgment that Sandoval's debt is non-dischargeable.

Finally, the facts alleged, as supported by the Bondsman's own exhibits, establish that the Bondsman cannot prevail on its Section 523(a)(7) claim, and therefore the Complaint should be dismissed for failure to state a claim for which relief may be granted.[5] A separate

---

[5]Although Sandoval has defaulted and has not filed a motion to dismiss, "a *sua sponte* dismissal under Rule 12(b)(6) is not reversible error when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, . . . and allowing him an opportunity to amend his complaint would be futile." McKinney v. Oklahoma Dept. of Human Services, 925 F.2d 363, 365 (10th Cir. 1991), *citing* Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) and Huxall v. First State Bank, 842 F.2d 249, 240 n.2 (10th Cir.1988).

8

order dismissing this adversary proceeding will be entered herewith.

**SO ORDERED** this 12th day of September, 2007.

*[signature]*
DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT