**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | ) | **Filed / Docketed** |
| | ) | **October 5, 2007** |
| SANDOVAL, JORGE H., aka | ) | Case No. 06-11316-R |
| SANDIVAL, JORGE HOMERO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| AFFORDABLE BAIL BONDS, INC. | ) | |
| and ROBERTA A. DAMPF- | ) | |
| AGUILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-1264-R |
| | ) | |
| JORGE H. SANDOVAL aka | ) | |
| JORGE HOMERO SANDIVAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION REGARDING**
**CERTIFICATION PURSUANT TO 28 U.S.C. § 158(d)(2)(A)(i)**

Contemporaneously herewith, this Court, on its own motion, has filed a Certification of Final Orders to the United States Court of Appeals for the Tenth Circuit Pursuant to 28 U.S.C. § 158(d)(2)(A)(i). This Memorandum Opinion sets forth the grounds for certification as required by Interim Bankruptcy Rule 8001(f)(3)(C)(i)-(iv) and (f)(4).

A.  "[T]he facts necessary to understand the question presented."[1]

The Defendant, Jorge H. Sandoval ("Sandoval"), filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 26, 2006. On December 5, 2006,

---

[1] Fed. R. Bankr. P. 8001(f)(3)(C)(i) (Interim Rule).

Plaintiffs Affordable Bail Bonds, Inc. and Roberta A. Dampf-Aguilar (collectively, the "Bondsman") filed a Complaint to Determine Dischargeability of Debt (Adv. Doc. 1) (the "Complaint"), asserting that Sandoval owed the Bondsman a debt that was excepted from discharge pursuant to 11 U.S.C. § 523(a)(7) ("Section 523(a)(7)").  When Sandoval failed to file an answer or otherwise respond to the Complaint, the Bondsman filed a Motion for Default Judgment (the "Motion"), requesting that the Court declare that Sandoval's debt to the Bondsman was excepted from the discharge entered in Sandoval's bankruptcy case.  In evaluating the Motion, the Court deemed the allegations contained in the Complaint to be admitted by Sandoval and considered whether the allegations in the Complaint, together with exhibits the Bondsman submitted in support of his Motion, stated a claim for an exception from discharge under Section 523(a)(7).  The material facts alleged by the Bondsman, taken in the light most favorable to the Bondsman, are as follows:

The Bondsman is a professional bail bondsman who posted two bonds with the District Court of Tulsa County, State of Oklahoma ("Bonds"), as surety for the promise of a criminal defendant, Bonito Yanez ("Yanez"), to appear in court as ordered or forfeit the Bonds.  Complaint, ¶¶ 2, 3, 8.  The Bonds, with face value totaling $16,000.00, were executed by Yanez, as principal, and by the Bondsman, through its attorney in fact, as surety.  Exhibit 1 to the Motion (Bonds dated December 19, 2002).  Sandoval was not the criminal defendant, and he did not execute the Bonds or act as surety to the State of Oklahoma on behalf of Yanez or the Bondsman.[2]

---

[2]Although in the Complaint, the Bondsman alleges that Sandoval obligated himself as a "surety and indemnitor for the full amount of a bail bond," the exhibits clarify that

2

On January 13, 2003, Yanez failed to appear at a scheduled court hearing. Consequently, the Bonds were forfeited, and Yanez and the Bondsman became responsible for payment of the Bonds to the State of Oklahoma. Complaint, ¶¶ 9, 10; Exhibit 2 to the Motion (Docket Sheet for Yanez's Tulsa County criminal case). On January 15, 2003, the Tulsa County District Court entered an Order and Judgment of Forfeiture, which declared that Yanez's Bonds were forfeited to the State of Oklahoma and ordered that the Bondsman deposit with the clerk of the court an amount equal to the face amount of the Bonds within ninety-one days. Exhibit 3 to the Motion (Forfeiture Judgment). On April 15, 2003, the Bondsman paid $16,000.00 to the State of Oklahoma on behalf of Yanez, as required by the Forfeiture Judgment. Exhibit 4 to the Motion (Affidavit of Roberta Dampf-Aguilar); Exhibit 5 to the Motion (Receipt for Payment).

In order to induce the Bondsman to obtain Yanez's release on bail by posting the Bonds in December 2002, Sandoval executed agreements with the Bondsman as an "indemnitor." Complaint, ¶ 7; Exhibit 6 to the Motion (Plain Talk Agreement); Exhibit 7 to the Motion (Bail Agreement); Exhibit 8 to the Motion (Indemnitor/Guarantor Checklist). In the Bail Agreement, Sandoval agreed to "pay [the Bondsman] upon declaration of forfeiture of said Bail Bond the penal amount thereof." Bail Agreement, ¶ SIXTH. The Indemnitor/Guarantor Checklist also provided that "if the bond is ordered forfeited and it is not ordered reinstated or exonerated . . . [Sandoval] must pay the full amount of the bail forfeited <u>to the bail agency</u>." Indemnitor/Guarantor Checklist, ¶ 6 (emphasis added).

---

Sandoval contractually guaranteed payment of the amount of forfeited bonds *to the Bondsman*, not to the State of Oklahoma. See Exhibits 6-8 to the Motion.

Upon forfeiture of the Bonds, Sandoval became contractually obligated to the Bondsman in the "penal amount" of the Bonds, *i.e.*, $16,000.00. Complaint, ¶ 12. Pursuant to the Bail Agreement, Sandoval also owed $4,150.00 for expenses incurred by the Bondsman related to securing the return of Yanez into the custody of the State of Oklahoma. Id. On February 10, 2003, the Bondsman filed a breach of contract action against Sandoval seeking damages of $20,150.00, and on May 6, 2004, the Bondsman obtained a judgment by default against Sandoval in the amount of $20,150.00. Complaint, ¶¶ 13, 14.

B.    "[T]he question itself."[3]

The dispositive issue was whether the debt arising from Sandoval's breach of the agreement to indemnify the Bondsman when the Bondsman suffered a loss due to the criminal defendant's bond forfeiture created a debt excepted from discharge under Section 523(a)(7).

C.    "[R]elief sought."[4]

Section 523(a)(7) excepts from discharge a "debt [that] is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ."  The Bondsman alleged that based upon the Complaint and the supplemental documents, the Court was required to enter a default judgment against Sandoval and in favor of the Bondsman, declaring Sandoval's debt non-dischargeable under Section 523(a)(7).

---

[3]Fed. R. Bankr. P. 8001(f)(3)(C)(ii) (Interim Rule).

[4]Fed. R. Bankr. P. 8001(f)(3)(C)(iii) (Interim Rule).

4

Applying the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to the proceeding by Bankruptcy Rule 7012, to determine whether the well-pleaded allegations contained in the Complaint, as supplemented by the Bondsman's own exhibits, taken in the light most favorable to the Bondsman, stated a claim for excepting Sandoval's debt to the Bondsman from discharge, the Court concluded that the Bondsman failed to allege any of the three elements of a Section 523(a)(7) claim.

Specifically, the Court concluded that the Complaint and supporting documents indisputably established that (1) Sandoval was not a party to the Bonds that were forfeited, and therefore his debt was not for a forfeiture of a bond, nor was his debt for a fine or penalty imposed upon him by the State; (2) Sandoval's debt was not payable to the State nor was it for the benefit of the State, but rather, the debt was payable to the Bondsman; and (3) the debt resulted from the breach of Sandoval's promise to indemnify the Bondsman for the monetary losses incurred when the Bondsman paid Yanez's debt to the state, and therefore functioned as "compensation for pecuniary loss."  Accordingly, the Court held that the Bondsman was not entitled to a judgment, by default or otherwise, that Sandoval's debt was non-dischargeable, and further, that the Complaint failed to state a claim under Section 523(a)(7) and should be dismissed.  An Order Denying Motion for Default Judgment (Adv. Doc. 15) and Order for Dismissal (Adv. Doc. 16) were entered and docketed on September 12, 2007 (the "Final Orders").

On September 21, 2007, the Bondsman filed a Notice of Appeal of the Final Orders (Adv. Doc. 19) and elected to have the appeal heard by the District Court (Adv. Doc. 20).

On September 25, 2007, the Bondsman filed a Corrected Notice of Appeal (Adv. Doc. 27). The appeal has not yet been docketed in the District Court. See Fed. R. Bankr. P. 8007.

D.   "[T]he reasons why the appeal should be allowed and is authorized by the statute or rule, including why a circumstance specified in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) exists."[5]

The Final Orders "involve[] a question of law as to which there is no controlling decision" of the United States Court of Appeals for the Tenth Circuit (the "Court of Appeals") or of the United States Supreme Court.[6]   See 28 U.S.C. § 158(d)(2)(A)(i). Accordingly, the Bondsman's appeal of the Final Orders is within the jurisdiction of the Court of Appeals, and pursuant to 28 U.S.C. § 158(d)(2)(B), this Court is required to file a certification that the appeal is eligible for a direct appeal to the Court of Appeals.

---

[5] Fed. R. Bankr. P. 8001(f)(3)(C)(iv) (Interim Rule).

[6] The Third, Fourth, and Fifth Circuit Courts of Appeal have issued decisions relating to the dischargeability of debts under Section 523(a)(7) arising from bail forfeitures. See Dobrek v. Phelan, 419 F.3d 259 (3d Cir. 2005); City of Philadephia v. Gi Nam (In re Gi Nam), 273 F.3d 281 (3d Cir. 2001); Hickman v. Texas (In re Hickman), 260 F.3d 400 (5th Cir. 2001); Virginia v. Collins (In re Collins), 173 F.3d 924 (4th Cir. 1999). As a third party indemnitor, however, Sandoval's debt is factually distinguishable from the debts addressed in those circuit decisions.
   A handful of lower courts have determined that a contractual third party indemnitor of a bondsman does not incur a non-dischargeable debt upon the failure to indemnify a bondsman who pays a forfeited bond. See Corrales v. Sanchez (In re Sanchez), 365 B.R. 414 (Bankr. S.D.N.Y. 2007); Empire Bonding Agency v. Lopes (In re Lopes), 339 B.R. 82 (Bankr. S.D.N.Y. 2006); Pioneer Gen'l Ins. Co. v. Midkiff (In re Midkiff), 86 B.R. 239, 240 (Bankr. D. Colo. 1988). But see Findings of Fact, Conclusions of Law and Judgment Determining that Debt Due Plaintiff is Non-Dischargeable entered in Amwest Surety Ins. Co. v. Contreras (In re Contreras), Adv. No. 01-3317-AJG (Bankr. S.D.N.Y. July 31, 2006).
   The Tenth Circuit Court of Appeals has not published any decisions concerning the dischargeability of a debt that has arisen in the context of a bail forfeiture.

6

The Court also notes that the Bondsman is the plaintiff in another case before this Court in which the material facts are substantively identical to those in this case. See Affordable Bail Bonds, Inc. and Roberta A. Dampf-Aguilar v. Michael Rex Thompson and Sandra Ray Thompson, Adv. No. 07-1016-R (Bankr. N.D. Okla.) (the "Thompson Case").[7] Contemporaneously with the entry of Final Orders in this case, the Court entered summary judgment against the Bondsman in the Thompson Case. See Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Cross Motion for Summary Judgment (Thompson Case Adv. Doc. 20) ("Thompson Order") and Judgment (Thompson Case Adv. Doc. 21). This Court adopted the analysis, reasoning and authorities set forth in the Thompson Order in support of its decision in this case. The Bondsman has also appealed the Thompson Order and judgment to the District Court (the "Thompson Appeal"). Because the Thompsons' bankruptcy case was filed prior to the effective date of Section 158(d)(2)(A), it appears that the Thompson Order is not eligible to be directly appealed to the Court of Appeals. See In re McKinney, 457 F.3d 623 (7th Cir. 2006) (direct appeal provisions of BAPCPA do not apply to bankruptcy cases filed prior to BAPCPA's effective date). If the Court of Appeals accepts the direct appeal of this case, however, the Thompson Appeal may be stayed, and the resolution of this appeal will likely provide precedent that would also resolve the Thompson Appeal.

---

[7] In the Thompson Case, the bonds that were executed by the criminal defendant as principal and the Bondsman as surety, and the Bail Agreement, Plain Talk Contract and Indemnitor/Guarnator Checklist that were executed by the Thompsons, as indemnitors, were substantially identical to the bonds and contracts at issue in this case.

7

Parties are advised that pursuant to Interim Bankruptcy Rule 8001(f)(4)(2), a short supplemental statement of the basis for certification may be filed within ten (10) days hereof.

**DATED** this 5th day of October, 2007.

_____
DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT